## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | | |
|---|---|---|
| **JAMES F. PERKINS and CELIA MAE PERKINS,** | § § § | |
| **Plaintiffs,** | § § § | |
| **v.** | § § | **Case No. 21-cv-2116** |
| **AVIATOR FINANCIAL CONSULTING, LLC, and WILLIAM J. PALADINO, JR.,** | § § § § | |
| **Defendants.** | § § | |

---

### COMPLAINT WITH DECLARATORY RELIEF REQUESTED

---

Plaintiffs James Perkins and Celia Perkins (collectively "Plaintiffs") file this, their Original Complaint with Declaratory Relief Requested, and would respectfully show the Court as follows:

### PARTIES

1.      Plaintiff James F. Perkins ("Mr. Perkins") is an individual and a citizen of the State of Florida.

2.      Plaintiff Celia Mae Perkins ("Mrs. Perkins") is an individual and a citizen of the State of Florida.

3.      Defendant William J. Paladino, Jr. ("Paladino") is an individual and a citizen of the State of Texas and no other state. Mr. Paladino may be served with

service of process by serving him at his residence – 110 Sunset Terrace Ct., Montgomery, Texas 77316; or at his principal place of business – 525 Woodland Square Blvd, Suite 250, Conroe, Texas 77384.

4.     Defendant Aviator Financial Consulting, LLC ("Aviator") is a Texas limited liability company with its principal place of business located at 525 Woodland Square Blvd, Suite 250, Conroe, Texas 77384. Aviator's sole member is William J. Paladino, Jr. is a citizen of the State of Texas. Aviator is a citizen of Texas and no other state. Aviator may be served with process by serving its registered agent for service of process, William J. Paladino, Jr., at its registered office address: 525 Woodland Square Blvd, Suite 250, Conroe, Texas 77384.

## JURISDICTION & VENUE

5.     The Court has jurisdiction over the lawsuit under 28 U.S.C. § 1332(a)(1) because there is complete diversity between the parties—Plaintiffs and Defendants are citizens are citizens of different U.S. states—and the amount in controversy in this dispute exceeds $75,000, excluding interest and costs. The Court has personal jurisdiction over Defendants because, among other reasons, Aviator entered into a contract to purchase and take delivery of an aircraft in Sarasota, Florida, that is subject to Florida law; Defendants have prosecuted a lawsuit against Plaintiffs with respect to that same transaction and occurrence in this District (defined herein as the "First Lawsuit"); the First Lawsuit remains pending in this District and this civil action constitutes a related case under the

Court's Local Rule 1.07(c).

6.      Under 28 U.S.C. § 1391(b)(2), venue is proper in the Middle District of Florida, Tampa Division because a substantial part of the events or omissions giving rise to this claim occurred in this district.

## FACTS

7.      Mr. Paladino is the owner and sole member of Aviator Financial Consulting (Aviator and Mr. Paladino are referred to collectively herein as "Defendants").

8.      Mr. Paladino has been an airline pilot with a major US airline for the past 25 years. He has flown all over North America as a captain on a Boeing 737. He has more than a decade of experience flying all over the world as a first officer on the Boeing 757, Boeing 767, and Boeing 777. In addition to being a pilot, Mr. Paladino is a sophisticated, experienced businessman who provides wealth management services through Aviator using the tradename "Paladino Wealth."

9.      Mr. Perkins is the President of International Aircraft Marketing & Sales, LLC ("IAMS"), an aircraft brokerage firm. Mrs. Perkins is the Vice President of IAMS.

## A. Aviator Buys an Airplane

10.     In 2020, IAMS listed a 1976 Cessna Model 421C, serial number 421C-0108, U.S. registration number N421BM (hereinafter "Aircraft") on the internet for

3

sale or lease (the "Advertisement"). A true and correct copy of the Advertisement is attached hereto as Exhibit 1 and is fully incorporated herein by reference.  The Aircraft was located in Sarasota, Florida and owned by KSJ Family, Inc. ("KSJ").

11.    Michael Lewis is an independent contractor sales agent for IAMS. Mr. Lewis was identified on the Advertisement as the person to contact regarding the Aircraft.

12.    On or about September 4, 2020, Aviator, by and through Mr. Paladino, contacted Mr. Lewis by phone to inquire about purchasing the Aircraft. After they spoke on the phone, Mr. Lewis sent a copy of the Aircraft's logbooks by email to Paladino. *See* Emails from M. Lewis to W. Paladino dated September 4, 2020 and September 9, 2020, a true and correct copy of which are attached hereto as Exhibit 2 (attachments to the emails omitted due to length).  In addition to maintenance and repair information, the logbooks reflect the accumulated flying time (and Hobbs time) to date on the Aircraft as of each maintenance, repair or inspection entry.  A cursory review of those entries makes clear that the Aircraft did not have any significant flying time for the past ten years. As a pilot with decades of experience, Mr. Paladino knows how to review/read aircraft logbooks. Despite requesting and (ostensibly) reviewing the Aircraft's logbooks, which show a lack of flying time over the past decade, Aviator made an offer to purchase the Aircraft that same day.

13.    Mr. Paladino advised Mr. Lewis (via email) of the terms under which

he wanted to purchase the Aircraft.  Mr. Lewis prepared an aircraft purchase agreement reflecting those terms and sent it to Aviator and Paladino for their review. After a few further email communications between Mr. Lewis and Defendants, Aviator and KSJ entered into a valid, binding, and enforceable Aircraft Purchase Agreement dated September 5, 2020 (the "AP Agreement") for the sale and purchase of the Aircraft. A true and correct copy of the AP Agreement is attached hereto as Exhibit 3 and is fully incorporated herein by reference.

14.     The AP Agreement expressly provided that the "AIRCRAFT is being sold with all known logbooks, maintenance records and components as installed **in an AS-IS, WHERE-IS condition with the SELLER offering no warranties or guaranties of any kind whatsoever**." AP Agreement at 1 (emphasis in original). The AP Agreement further provided:

> An Inspection of the AIRCRAFT must begin within TEN (10) business days of the execution of this AGREEMENT by both PURCHASER [Aviator] and SELLER [KSJ]. This Inspection shall include engine runs, compression checks, avionics checks, systems checks, logbook review, visual inspection, and test flight not to exceed ONE flight hour. This Inspection shall take place at the Sarasota-Bradenton International Airport (KSRQ) and the Inspection shall be conducted by the PURCHASER [Aviator] and/or PURCHASER'S [Aviator's] representative. ...
>
> Following the completion of the Inspection, PURCHASER shall accept or reject the AIRCRAFT within TWO (2) business days of the completion of the Inspection of AIRCRAFT.

AP Agreement p. 1.

15.     In the logbooks provided to Defendants before Aviator made the offer

to purchase the Aircraft, there is an entry dated October 18, 2019, reflecting Paula McCabe's performance of an annual inspection of the Aircraft (the "McCabe Inspection Entry"). A true and correct copy of the McCabe Inspection Entry is attached hereto as Exhibit 4 and incorporated fully herein by reference. According to the McCabe Inspection Entry, the Aircraft was determined to be in "airworthy condition" and the Aircraft was "approved for return to service." *See* McCabe Inspection Entry.

16.    After entering into the AP Agreement, Defendants hired Westcoast Aviation Services, LLC ("WAS") to conduct a *limited visual* inspection of the Aircraft.  Scott Evaschuk is the managing member of WAS.

17.    In order to facilitate WAS's inspection of the Aircraft, Mr. Paladino emailed copies of the Aircraft's logbooks to WAS.  The McCabe Inspection Entry was in the logbooks Defendants provided to WAS.

18.    WAS conducted its limited visual inspection of the Aircraft and Mr. Evaschuk emailed WAS's inspection findings to Mr. Paladino.  A true and correct copy of the inspection results and WAS's emails with Mr. Paladino regarding the inspection are attached hereto as Exhibit 5 and incorporated fully herein by reference. **WAS's inspection results email to Mr. Paladino included five (5) separate, specific references to corrosion on various parts of the Aircraft**. Exhibit 5, p. 1.

19.    On September 16, 2020, after having a test flight conducted and

receiving the results of WAS's limited visual inspection, Aviator executed the

Aircraft Technical Acceptance (the "Aircraft Acceptance"). The Aircraft Acceptance

is attached hereto as Exhibit 6 and incorporated fully herein by reference.

20.     In the Aircraft Acceptance, Defendants expressly acknowledged the

following:

> pursuant to the AIRCRAFT PURCHASE AGREEMENT dated SEPTEMBER 5TH, 2020 by and between PURCHASER and SELLER … **PURCHASER has completed all of their Inspections of the AIRCRAFT, engines, propellers, and logbooks** and has determined that:
>
> The AIRCRAFT is hereby ACCEPTED in accordance with the terms of the AIRCRAFT PURCHASE AGREEMENT … The AIRCRAFT is sold and delivered **'as is, where is' and with all faults** and PURCHASER agrees and acknowledges that, SELLER will not have any liability in relation to, and **SELLER has not nor will be deemed to have made or given any warranties or representations, express or implied, with respect to the AIRCRAFT** … **PURCHASER acknowledges that in accepting the AIRCRAFT, PURCHASER has relied solely upon its own investigation of the Aircraft.**

Aircraft Acceptance (emphasis added).

21.     The Aircraft Acceptance also contained the following indemnification

provision:

> PURCHASER agrees to indemnify and hold harmless SELLER and/or INTERNATIONAL AIRCRAFT MARKETING & SALES and all of their shareholders, officers, members, managers, agents, representatives and employees, from any claims, actions, suits and judgments and expenses including claims, costs, attorney fees and damages from the date of the execution of this AIRCRAFT TECHNICAL ACCEPTANCE in connection with the purchase and subsequent use of the AIRCRAFT post-closing and in connection with loss of life, personal injury, product liability claims and/ or damage to AIRCRAFT arising from, or out of any use of any portion of the AIRCRAFT and any breach of the terms of this AGREEMENT, by SELLER and/or INTERNATIONAL AIRCRAFT MARKETING & SALES, or their agents, members, partners and associates, contractors or employees.

(the "Indemnification Agreement"). *See* Aircraft Acceptance (emphasis added).

22.     Per the Indemnification Agreement, Aviator, on the one hand, and KSJ and IAMS on the other, agreed that in consideration of Aviator's acceptance of the Aircraft, Aviator would "indemnify and hold harmless" KSJ and IAMS, along with all of their "shareholders, officers … [and] agents," from the types of claims contained therein. *Id*.

23.     As an experienced and astute businessman, Mr. Paladino almost certainly understands the importance of reviewing and understanding a contract prior to executing it on behalf of Aviator.  Moreover, as an experienced pilot with decades of experience, Mr. Paladino knew not only how to read and understand the logbook entries, but also the importance of reviewing the information contained therein.

24.     Shortly after executing the Aircraft Acceptance, Defendant Aviator took possession of the Aircraft and flew the Aircraft to Texas.

**B. <u>Aviator Has Buyer's Remorse</u>**

25.     On November 24, 2020, Aviator and Mr. Paladino—by and through their counsel—sent a ranting demand letter wherein they allege that KSJ, IAMS, WAS, Mr. Perkins, Mrs. Perkins, Mr. Lewis, Ms. McCabe and a myriad of other parties (i) failed to disclose the Aircraft's lack of flying time (which they expressly state is readily apparent from reviewing the logbooks) and the presence of corrosion (despite WAS's disclosure of at least five areas of corrosion on the Aircraft as part

8

of the visual inspection notes to Aviator and Paladino) and (ii) engaged in a "vast an wide ranging conspiracy" to present the Aircraft in a false light to Aviator and Mr. Paladino.    A true and correct copy of the Demand Letter is attached hereto as Exhibit 7.

26.    Thereafter, on December 28, 2020, Aviator and Mr. Paladino sued fourteen parties in the 284th Judicial District Court of Montgomery County, Texas ("First Lawsuit"). *See* Plaintiffs' Original Petition and Requests for Disclosure ("Petition") is attached hereto as Exhibit 8 and incorporated fully herein by reference.  The various defendants named in the First Lawsuit  included not only KSJ (the seller of the Aircraft to Aviator) and the party hired to conduct a limited visual inspection of the Aircraft (WAS), but also IAMS (the company that marketed the aircraft for sale), IAMS' independent contractor sales agent (Mr. Lewis), IAMS' principals (Mr. and Mrs. Perkins),  prior owners in the chain of title, their principals, and various parties involved in prior maintenance and inspections of the aircraft.

27.    As pleaded, it was difficult to discern from the Petition exactly what causes of action Aviator and Mr. Paladino had asserted against the fourteen defendants. A generous reading of the Petition seemed to assert the following causes of action: breach of contract (against KSJ and WAS), promissory estoppel (against KSJ and WAS), breach of express and implied warranty/services (against KSJ and WAS), violations of the Texas Deceptive Trade Practices Act (against KSJ and WAS), fraud (against all fourteen defendants), and conspiracy (against all fourteen

defendants).

28.     On February 5, 2021, the claims asserted in the Petition were removed to the United States District Court for the Southern District of Texas on the basis of diversity of citizenship. On April 23, 2021,  the United States District Court for the Southern District of Texas transferred the lawsuit to the United States District Court for the Middle District of Florida.  The First Lawsuit is now Civil Action No. 21-CV-00982-SCB-AAS pending before the Honorable District Court Judge Bucklew.

29.     On July 22, 2021, Judge Bucklew dismissed the Petition in its entirety, but granted Aviator and Paladino leave to file an amended complaint in the First Lawsuit by August 2, 2021. Order dated July 22, 2021 (the "Dismissal Order") [ECF 81].

30.     On August 2, 2021, Aviator and Paladino filed their First Amended Complaint ("FAC") in the First Lawsuit. *See generally* FAC, Civil Action. No. 21-CV-00982-SCB-AAS [ECF 82]. Therein, they continued to allege causes of action against six of the original fourteen defendants. *See id*. More specifically, Aviator and Paladino assert the following causes of action: breach of contract (against KSJ and WAS), promissory estoppel (against WAS), breach of express and implied warranty/services (against WAS), (against six remaining defendants), and conspiracy (against six remaining defendants).  Unlike the original Petition, the FAC does not assert claims against Plaintiffs James and Celia Perkins.

31.     Allegations of fraud and conspiracy are very serious claims to assert

against someone. Despite having no facts or evidence to support their fraud and conspiracy claims and having received specific disclosures regarding flight time via the logbooks and corrosion from WAS/Evaschuk's visual inspection report, Aviator and Mr. Paladino alleged those grave claims against Mr. and Mrs. Perkins in the First Lawsuit.

32.     Both Mr. and Mrs. Perkins have experience in the aviation industry. By making their baseless allegations of fraud and conspiracy, Aviator and Mr. Paladino have tainted Plaintiffs' names and cast dispersions on their business reputation and credibility.  As such, Plaintiffs are entitled to declaratory judgment relief to clear their names. Further, to date Plaintiffs have incurred significant litigation expenses in defending themselves against these plainly spurious claims.  Pursuant to the Indemnification Agreement, Plaintiffs James and Celia Perkins are entitled to recover from Aviator all of their attorneys' fees and costs.

## CAUSES OF ACTION

### COUNT ONE – DECLARATORY RELIEF
### (Against Defendant Aviator)

33.     Plaintiffs incorporate by reference herein the factual allegations and matters set forth in paragraphs 1-32.

34.     Plaintiffs bring this suit for a declaratory judgment under both Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202.

35.     There is an actual, present, substantial, and justiciable controversy

within this Court's jurisdiction that exists between Plaintiffs and Defendants relating to their relative rights and obligations under the Agreement, including the Aircraft Acceptance.

36.    Specifically, Plaintiffs desire a judicial determination and declaration of the respective rights and duties of the parties herein with respect to the AP Agreement including the Aircraft Acceptance and Indemnification Agreement set forth in the Aircraft Acceptance that Defendant Aviator is obligated to indemnify and hold Plaintiffs harmless and reimburse them for all losses, claims, costs, and attorneys' fees as set forth in the Indemnification Agreement with respect to Paladino's claims against them.  The requested declaration is necessary to protect Plaintiffs from uncertainty and insecurity, which is causing Plaintiffs injury by, among other things, disrupting their businesses, causing them to pay significant legal bills in prosecuting two motions to dismiss and damaging their goodwill and reputation in the aviation industry. Without the requested declaration of the parties' rights, Defendant Aviator will continue to cause harm and disruption to Plaintiffs.

37.    Accordingly, Plaintiffs respectfully request that the Court declare that Defendant Aviator is liable to Plaintiffs James and Celia Perkins for all claims, costs, attorneys' fees and damages incurred by them in defending themselves against the claims of Defendant Paladino in the First Lawsuit.

## COUNT TWO – DECLARATORY RELIEF
### (Against Defendants)

38.    Plaintiffs incorporate by reference herein the factual allegations and matters set forth in the paragraphs 1-32.

39.    Plaintiffs bring this suit for a declaratory judgment under both Federal Rule of Civil Procedure 57 and 28 U.S.C. §§ 2201 and 2202.

40.    There is an actual, present, substantial, and justiciable controversy within this Court's jurisdiction exists between Plaintiffs and Defendants relating to the relative disclosure obligations under the Agreement and more generally as part of the AP Agreement Transaction.

41.    While it is clear that Aviator and Mr. Paladino were aware of the lack of significant flying time on the Aircraft over the past decade and the presence of corrosion on the Aircraft, Defendants Aviator and Mr. Paladino nevertheless contended that Plaintiffs conspired to hide those facts and failed to disclose them Aviator and Mr. Paladino.

42.    Plaintiffs are respected members of the aviation industry and their regular business involves the buying and selling of Aircraft both directly and indirectly as agents for the parties-in-interest.  Thus, Plaintiffs desire a judicial determination and declaration of the disclosure duties vis-à-vis buyers such as Aviator and Mr. Paladino.  Specifically, Plaintiffs request that this Court declare that Plaintiffs were not legally obligated to provide any disclosure to Aviator or Mr.

13

Paladino regarding the condition of the Aircraft and that Plaintiffs were entitled to rely on Defendant Aviator's representation and agreement that Aviator had completed its inspection and that they were not relying on any warranties or representations, express or implied, with respect to the Aircraft and that Aviator was solely relying upon its own investigation of the Aircraft in moving forward to close the transaction.

43.     The requested declaration is necessary to protect Plaintiffs' reputation and goodwill in the aviation industry. Without the requested declaration of the parties' rights, Defendants Aviator and Mr. Paladino will continue to cause harm and disruption to Plaintiffs.

44.     Accordingly, Plaintiffs respectfully request that the Court declare that they owed no disclosure duties to Aviator or Mr. Paladino as part of the AP Agreement transaction.

## COUNT THREE – CONTRACTUAL INDEMNIFICATION / BREACH OF INDEMNIFICATION AGREEMENT
### (Against Defendant Aviator)

45.     Plaintiffs incorporate by reference herein the factual allegations and matters set forth in paragraphs 1-32.

46.     Plaintiffs James and Celia Perkins bring this claim against Defendant Aviator for contractual indemnification / breach of the indemnification agreement.

47.     KSJ and IAMS agreed, by contract, that in consideration of Defendant

14

Aviator's acceptance of the Aircraft, that Defendant Aviator would "indemnify and hold harmless" KSJ and IAMS, along with all of their "shareholders, officers … [and] agents," from the types of claims contained therein, which includes Mr. and Mrs. Perkins. *See* Aircraft Acceptance.

48.    Under the terms of the Aircraft Acceptance Agreement, Defendants have an obligation to indemnify Plaintiffs James and Celia Perkins.

49.    Defendant Aviator has breached the Indemnification Agreement by failing to indemnify, hold harmless and reimburse Plaintiffs for their costs and attorneys' fees in defending themselves against Defendant Paladino's claims against them in the First Lawsuit relating to the Aircraft and the AP Agreement.

50.    Defendant's breach of the Indemnification Agreement caused economic injury to Plaintiffs James and Celia Perkins for their unreimbursed reasonable attorneys' fees and expenses.

## ATTORNEYS' FEES AND COSTS

51.     Plaintiffs incorporate by reference herein the factual allegations and matters set forth in paragraphs 1-32.

52.    As a result of Defendants' actions, it was necessary for Plaintiffs to employ the services of the undersigned counsel to institute and prosecute this action. Plaintiffs are entitled to recover reasonable and necessary attorneys' fees and costs incurred in prosecuting this lawsuit.

## CONDITIONS PRECEDENT

53.     All conditions precedent to Plaintiffs' recovery have been performed or have occurred as required by applicable law.

## PRAYER

WHEREFORE, Plaintiffs James Perkins and Celia Perkins respectfully seek judgment against Defendants Aviator Financial Consulting, LLC and William J. Paladino, Jr., jointly and severally, as follows:

a.     a declaration from the Court that Defendant Aviator is liable to Plaintiffs James Perkins and Celia Perkins for all claims, costs, attorneys' fees and damages incurred by them in defending themselves against the claims of Defendant Paladino;

b.     award actual damages to Plaintiffs James Perkins and Celia Perkins;

c.     equitable relief to the extent permitted by law;

d.     reasonable attorney's fees and court costs, at all levels of the legal process;

e.     any and all recoverable or taxable costs to the extent permitted by law;

f.     for all costs of court; and

g.     for such other and further relief, both general and special, at law or in equity, to which Plaintiffs may be justly entitled.

DATE: September 2, 2021

Respectfully submitted,

By: */s/ Dineen Pashoukos Wasylik*
Dineen Pashoukos Wasylik
Florida Bar No. 0191620
DPW LEGAL
P.O. Box 48323
Tampa, FL  33646
P: 813-778-5161; F: 813-907-3712
dineen@ip-appeals.com
service@ip-appeals.com

**COUNSEL FOR PLAINTIFFS
JAMES PERKINS & CELIA PERKINS**